1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            CENTRAL DISTRICT OF CALIFORNIA

10   JOSEPHINE MORA,                      )    Case No. ED CV 06-00027-PJW
                                          )
11              Plaintiff,                )
                                          )    MEMORANDUM OPINION AND ORDER
12        v.                              )
                                          )
13   JO ANNE B. BARNHART,                 )
     Commissioner of the                  )
14   Social Security Administration,      )
                                          )
15              Defendant.                )
                                          )
16

17                                        I.

18                                   INTRODUCTION

19        Plaintiff brings this action, challenging the decision by

20   defendant Social Security Administration ("the Agency"), denying her

21   application for Supplemental Security Income ("SSI").  She asks the

22   Court to reverse the Agency's decision and award benefits, or, in the

23   alternative, to remand the case to the Agency for further proceedings.

24   For the reasons discussed below, the Agency's decision is REVERSED and

25   the case is REMANDED for further proceedings.

26

27

28

1                                  II.

2                                 FACTS

3    A.    Plaintiff's Personal History and Work History

4          Plaintiff was born on December 15, 1954, and was 50 years old at

5    the time of the hearing.  (Administrative Record ("AR") 55, 257.)

6    She has an eighth-grade education and prior work experience as a

7    housekeeper in a convalescent facility.  (AR 257.)  Plaintiff contends

8    that, beginning in September 2000, her physical ailments rendered her

9    unable to work.  (AR 55.)

10   B.    Plaintiff's Medical Condition and Treatment

11         In her disability report, Plaintiff stated that she suffered from

12   degenerative joint disease, two hernia repair surgeries, and other

13   conditions.  (AR 64.)  Plaintiff asserted that these conditions

14   limited her ability to work because they caused her aches and pains in

15   all parts of her body, numbness in her left arm, loss of strength and

16   balance, fatigue, and depression.  (AR 64, 70.)  In a later disability

17   report, Plaintiff stated that she had been diagnosed with diabetes and

18   arthritis, and that she slept "all the time."  (AR 94.)

19         Plaintiff sought medical care from her physician, Dr. Frederick

20   Curlin, and Dr. Curlin's physician's assistant Ezequiel Martinez.

21   Although the record contains minimal evidence regarding testing or

22   examination findings, Dr. Curlin made a variety of diagnoses,

23   including obesity, osteoarthritis, fibromyalgia, asthma, cervical

24   degenerative disc disease, cervical radiculopathy, lumbar spinal

25   stenosis, lumbar degenerative disc disease, hepatomegaly (fatty

26   liver), anxiety, and depression.  (AR 162-68, 170-71, 174-182, 185-86,

27   188-89, 249, 251, 253.)  In 2005, Plaintiff was diagnosed with breast

28

1  cancer, and underwent a lumpectomy approximately one month before the

2  administrative hearing.  (AR 222-23).

3  C.    The Administrative Proceedings

4        Plaintiff filed an application for SSI on September 3, 2003.  (AR

5  87-90.)  The application was initially denied on January 20, 2004, and

6  again on reconsideration on March 4, 2004.  (AR 22-25, 27-31.)

7  Thereafter, Plaintiff requested a hearing before an administrative law

8  judge ("ALJ"), which was granted, and a hearing was held on June 10,

9  2005.  (AR 39-43, 254-284.)

10       At the hearing, Plaintiff testified that her only work in the

11 preceding fifteen years was as a housekeeper.  (AR 257.)  She

12 testified that she stopped working because of pain in her neck, back,

13 arms, and legs.  (AR 262-63.)  She told the ALJ that the medications

14 she took for pain provided some relief, and that they did not cause

15 side effects.  (AR 258, 263).  She explained that, in addition to

16 pain, she had numbness and tingling in both arms and hands, and

17 swelling in her ankles.  (AR 265, 267.)  She also complained of

18 headaches, for which she took Tylenol.  (AR 266.)  Plaintiff testified

19 that she had been treated for hernias, which still caused pain

20 sometimes with moving or bending.  (AR 268).

21       Plaintiff also testified that she had suffered from asthma for a

22 long time, and had started using Albuterol spray to control it.  (AR

23 268.)  She offered that her diabetes was also controlled with

24 medication.  (AR 268-69.)  She told the ALJ that her doctor had

25 recommended exercise for weight loss, and that she had started walking

26 for periods of about ten minutes.  (AR 269-70.)

27       According to Plaintiff, her conditions had affected her ability

28 to do things around the house.  She testified that she would sometimes

1  drop things such as a five-pound bag of sugar or plates.  She offered

2  that she still washed dishes, but that she was slow, and did not do as

3  much housework.  (AR 271-72.)

4       Plaintiff testified that, not long before the hearing, she had

5  been diagnosed with breast cancer and had undergone surgery for the

6  cancer, but had not yet started chemotherapy.  (AR 258-59, 273.)  She

7  explained that she was depressed and was taking medication for

8  depression and anxiety, but had not obtained any mental health

9  treatment.  (AR 273-74.)

10      Dr. Doren, the medical expert, testified that Plaintiff's medical

11 records lacked significant objective findings to support the diagnoses

12 of her treating doctor.  (AR 275-79.)  Based upon his review of the

13 medical evidence, including the findings and opinions of state agency

14 and consulting physicians, Dr. Doren agreed with state agency

15 physicians Dr. George Spellman and Dr. Albert Lizarraras that

16 Plaintiff could perform light duty.  (AR 282.)

17      Vocational expert Sandra Fioretti testified about Plaintiff's

18 past work.  She explained that this work was in housekeeping in a

19 convalescent facility, and that it was light, unskilled work with an

20 SVP of 2.  (AR 284.)  In response to a hypothetical as to whether a

21 person with the limitations testified to by the Plaintiff could find

22 work, Ms. Fioretti testified that the combination of upper extremity

23 problems and other limitations would eliminate all work.  (AR 284.)

24      The ALJ issued a decision denying Plaintiff's application for DIB

25 on August 23, 2005.  (AR 12-19.)  The ALJ analyzed Plaintiff's claims

26 under the Agency's five-step sequential evaluation process.  At step

27 one, he found that Plaintiff had not engaged in substantial gainful

28 activity since her alleged onset date.  (AR 13, 18.)  At step two, he

1   found that Plaintiff suffered form severe impairments of the back,

2   neck, arms, and legs, following two hernia repair surgeries, and also

3   was afflicted with diabetes, obesity, atypical chest pain, and

4   depression.  (AR 13, 18.)  At step three, he determined that none of

5   the impairments alone or in combination met or equaled a Listed

6   impairment.  (AR 13-14.)

7       The ALJ analyzed the medical evidence, including evidence from

8   Plaintiff's treating physician and physician's assistant, state agency

9   doctors, and consulting examiners, including an internist, an

10  orthopedist, and a psychiatrist.  (AR 14-15.)  He found that

11  Plaintiff's alleged limitations were not fully credible, citing lack

12  of objective medical support, conservative treatment, and

13  inconsistency between her complaints and her daily activities.  (AR

14  16-17.)  The ALJ also rejected the statements of Plaintiff's sister-

15  in-law in a third-party activities questionnaire, finding her sister-

16  in-law not credible because of her personal relationship with

17  Plaintiff and because her observations were not supported by the

18  medical evidence.  (AR 17.)

19      The ALJ determined that Plaintiff could perform "light work,"

20  further limited by occasional postural limitations and no climbing

21  ladders, ropes, or scaffolds.  (AR 18.)  The ALJ did not identify any

22  specific mental limitations, but found that Plaintiff retained the

23  mental capacity to perform "simple, repetitive tasks."  (AR 17-18.)

24  Based on the vocational expert's testimony that Plaintiff's past work

25  was light and unskilled, and that Plaintiff could perform her past

26  work as previously performed, the ALJ found that Plaintiff was able to

27  perform her past work as a housekeeper.  (AR 17-18.)

28

1      Plaintiff requested that the Appeals Council review the ALJ's

2  decision.  (AR 7.)  On December 17, 2005, the Appeals Council denied

3  Plaintiff's request for review.  (AR 4-6.)  Plaintiff then filed the

4  instant Complaint.

5                                III.

6                              ANALYSIS

7      Plaintiff argues that the ALJ erred when he concluded that

8  Plaintiff could perform her past work as a housekeeper.  She contends

9  that the ALJ: (1) failed to properly consider the opinion of the

10 consultative psychiatrist; (2) posed an incomplete hypothetical to the

11 vocational expert; (3) improperly discounted the statements of

12 Plaintiff's sister-in-law; and (4) failed to give proper weight to the

13 opinion of Plaintiff's treating physician.  (Joint Stipulation ("JS")

14 2.)  For the following reasons, the Court concludes that the ALJ's

15 finding that Plaintiff could perform her past work was not supported

16 by substantial evidence and is reversed.

17 A.   Standard Of Review

18      "Disability" under Agency regulations is defined as the inability

19 to perform any substantial gainful activity due to any "medically

20 determinable physical or mental impairment which can be expected to

21 result in death or which has lasted or can be expected to last for a

22 continuous period of not less than 12 months."  *See* 42 U.S.C.

23 § 423(d)(1)(A).  The Court may overturn the ALJ's decision that a

24 claimant is not disabled only if the decision is not supported by

25 substantial evidence or if the decision is based on legal error.

26 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)(quoting *Green*

27 *v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).  "Substantial

28 evidence" is such "relevant evidence as a reasonable mind might accept

1  as adequate to support a conclusion."  *Magallanes*, 881 F.2d at 750.

2  It is "more than a mere scintilla but less than a preponderance."

3  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

4  B.    The ALJ Properly Considered The Opinion Of Plaintiff's Treating

5        Physician

6        In his fourth claim of error (which the Court elects to address

7  first), Plaintiff contends that the ALJ failed to give due weight to

8  the disability opinion of her treating physician, Dr. Frederick J.

9  Curlin, and improperly credited the opinion of the non-examining

10  medical expert, Dr. Walter W. Doren.  For the following reasons, the

11  Court disagrees.

12        Although a treating physician's opinion is generally afforded

13  more weight in disability cases than a non-treating physician's

14  opinion, it is not binding on an ALJ.  *Tonapetyan v. Halter*, 242 F.3d

15  1144, 1148 (9th Cir. 2001).  The ALJ "need not accept a treating

16  physician's opinion which is brief and conclusionary in form with

17  little in the way of clinical findings to support [its] conclusion."

18  *Magallanes*, 881 F.2d at 751 (internal quotations omitted); *see also*

19  *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  To reject the

20  *uncontroverted* opinion of a treating physician, an ALJ must set forth

21  clear and convincing reasons for doing so.  *Magallanes*, 881 F.2d at

22  751.  "Where the opinion of the claimant's treating physician is

23  contradicted, and the opinion of a nontreating source is based on

24  independent clinical findings that differ from those of the treating

25  physician, the opinion of the nontreating source may *itself* be

26  substantial evidence; it is then solely the province of the ALJ to

27  resolve the conflict."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

28  Cir. 1995)(emphasis added).  If, on the other hand, the nontreating

1  source relies on the same findings as the treating source, the ALJ

2  must provide specific and legitimate reasons for disbelieving the

3  treating source.  *Id.*

4      The ALJ noted that Plaintiff's treatment records consisted

5  principally of examination records and diagnoses--mostly prepared by a

6  physician's assistant and co-signed by Dr. Curlin--without evidence of

7  any significant objective testing.  (AR 15.)  The ALJ additionally

8  discussed the lack of objective findings by consultative examiners and

9  state agency doctors, as highlighted by the testimony of the medical

10 expert.  (AR 14-15.)  Accordingly, the ALJ concluded that the

11 disability opinions of Dr. Curlin were not controlling and could not

12 be given "substantial persuasive weight."  (AR 15.)  The Court agrees

13 with this analysis.

14      As noted by the ALJ, Plaintiff's treatment records are

15 conspicuously devoid of objective findings, such as examination

16 findings or test results, to support the diagnoses by her treating

17 doctor.  Examination reports prepared by physician's assistant

18 Ezequiel Martinez and co-signed by Dr. Curlin repeatedly referred to

19 diagnoses of osteoarthritis, cervical disc disease, lumbar disk

20 disease, and spinal stenosis, without any objective findings (such as

21 MRI, radiological studies, or lab tests) other than occasional

22 tenderness.  (AR 162-68, 170-71, 174-182, 185-86, 188-89, 249, 251,

23 253.)  Similarly, the reports indicate fibromyalgia without any

24 explanation or findings supporting the diagnosis.  (AR 162, 164, 166,

25 167, 170, 175, 176, 179, 180.)[1]

26 _____

27     [1]  Generally, fibromyalgia is exhibited by "'multiple tender
   spots, more precisely 18 fixed locations on the body (and the rule of
28 thumb is that the patient must have at least 11 of them to be

1       In addition to the lack of clinical findings to support his

2  diagnoses, Dr. Curlin's disability opinions were conclusory and

3  unsupported by explanations or findings.  Dr. Curlin did not complete

4  any evaluation of Plaintiff's residual functional capacity or provide

5  any explanation of limitations on Plaintiff's abilities.  The

6  disability opinions Plaintiff contends were improperly discounted were

7  set forth on short, check-the-box forms.  The first such form,

8  completed by physician's assistant Ezequiel Martinez on December 4,

9  2002, indicates permanent incapacitation from work due to degenerative

10 joint disease and fibromyalgia, which caused chronic pain.  (JS 253.)

11 On January 15, 2003, Mr. Martinez signed another form, again

12 indicating permanent disability, however, no condition or specific

13 limitations were identified.  (AR 252.)  On November 18, 2003, Mr.

14 Martinez again assessed Plaintiff as permanently disabled, due to

15 asthma, arthritis, and depression.  (AR 251.)  Mr. Martinez and Dr.

16 Curlin both signed an April 7, 2004, form indicating that Plaintiff

17 was permanently disabled due to fibromyalgia, osteoarthritis, and

18 degenerative disc disease, causing "moderate to severe pain and muscle

19 stiffness."  (AR 249.)  Finally, on March 21, 2005, Mr. Martinez again

20 completed a form, indicating only that Plaintiff was permanently

21 disabled, without specifying her conditions or limitations.  (AR 248.)

22      Plaintiff does not contest the ALJ's finding that her doctor's

23 diagnoses appeared to be based on minimal objective findings.  Rather,

24 she argues that Social Security Ruling ("SSR") 96-2p mandated

25

26
diagnosed as having fibromyalgia) that when pressed firmly cause the
27 patient to flinch.'"  *Rollins v. Massanari*, 261 F.3d 853, 855 (9th
Cir. 2001)(quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.
28 1996).

1  consideration of several factors before discounting the treating

2  doctor's opinion.  (JS at 15-16.)  The Court disagrees.  That ruling

3  clarified that the Agency could not substitute its judgment for the

4  opinion of a treating source when the opinion was "well-supported by

5  medically acceptable clinical and laboratory diagnostic techniques."

6  SSR 96-2p, 1996 WL 374188 at *1 (July 2, 1996); *see also* 20 C.F.R.

7  § 416.927(d)(2).  The ruling sets forth four criteria for determining

8  whether an opinion is entitled to controlling weight: (1) it must come

9  from a treating source; (2) it must be a "medical opinion" about the

10  nature and severity of an impairment; (3) it must be well-supported by

11  medically acceptable clinical and laboratory diagnostic techniques;

12  and (4) even if well-supported, it must be not inconsistent with other

13  substantial evidence in the record.  SSR 96-2p at *2.  If any one of

14  these criteria are not met, the opinion is not entitled to controlling

15  weight.  In Plaintiff's case, arguably none of the criteria are met.

16  It appears that most of the work was done by a physician's assistant,

17  not the doctor.  Moreover, given the extremely conclusory diagnoses,

18  and the lack of any discussion of severity or identification of

19  limitations attributable to those diagnoses, the disability opinion

20  barely qualifies as a "medical opinion" regarding the nature and

21  severity of Plaintiff's impairments.  Further, as noted by the medical

22  expert and the ALJ, the opinion is not even minimally supported by

23  clinical and laboratory diagnostic techniques.  Finally, it is also

24  inconsistent with other substantial evidence, most notably, the

25  opinion of the examining orthopedist, who found "no evidence of any

26  orthopedic problem" or any functional limitations.  (AR 146.)  *See*

27  *Andrews*, 53 F.3d at 1041 (holding that findings of consultative

28  examiner may be "substantial evidence).  Accordingly, the ALJ did not

1 err in finding that Dr. Curlin's opinion was not entitled to

2 controlling weight.

3 SSR 96-2p provides further that, even if the opinion of a

4 treating source is not entitled to controlling weight, it must be

5 considered under all the factors set forth in 20 C.F.R. §§ 404.1527

6 and 416.927. These factors take into account the length, nature, and

7 extent of the treatment relationship, consistency with evidence in the

8 record, the source's specialization, and "any factor" the Agency is

9 aware of or alerted to. 20 C.F.R. §§ 404.1527(d), 416.927(d).

10 Despite Plaintiff's assertions to the contrary, the ALJ specifically

11 referenced and considered these factors, noting inconsistencies in the

12 record, the lack of diagnostic testing, and diagnoses given based upon

13 minimal examinations. Tellingly, Plaintiff fails to identify any

14 factor that was improperly considered by the ALJ or to explain how

15 additional consideration would have led the ALJ to a different

16 conclusion.

17 Based upon his consideration of the factors set forth in 20

18 C.F.R. §§ 404.1527 and 416.927, the ALJ concluded that Dr. Curlin's

19 opinions were not entitled to "substantial persuasive weight." (AR

20 15.) In light of the lack of objective support for Dr. Curlin's

21 opinion, and the ALJ's consideration of the relevant factors, the

22 Court finds that the ALJ did not err in his evaluation of Dr. Curlin's

23 opinion, or in concluding that the opinion was not entitled to

24 controlling or substantial weight.

25 Having found that Plaintiff's treating source was not entitled to

26 substantial weight, it was not error for the ALJ to credit the

27 opinions of medical expert Dr. Doren, who had thoroughly reviewed the

28

1 record, and testified regarding all the medical evidence before the

2 ALJ.   20 C.F.R. § 416.927(f).

3 C.    The ALJ's Finding That Plaintiff Could Perform Past Work Was Not

4       Supported By Substantial Evidence

5       Plaintiff challenges the ALJ's finding that she could perform her

6 past work as a housekeeper, arguing that the ALJ failed to properly

7 incorporate her mental impairments in his residual functional capacity

8 assessment, and, in turn, failed to obtain necessary testimony from

9 the vocational expert.   The Court agrees.

10      1.    Plaintiff's Mental Impairments

11      Plaintiff contends that the ALJ failed to give adequate weight to

12 the opinion of examining psychiatrist Dr. Divy J. Kikani, who examined

13 Plaintiff in connection with a previous application in 2000, and again

14 on December 8, 2003.   In 2003, Dr. Kikani noted that Plaintiff showed

15 "excessive anxiety" and symptoms of depression, had a poor fund of

16 knowledge, and impaired abstracting ability and judgement.  (AR 150.)

17 Dr. Kikani gave Plaintiff a global assessment of functioning ("GAF")

18 score of 49.   Dr. Kikani assessed Plaintiff as suffering from a

19 recurrent type major depressive disorder.  (AR 151.)  He opined that

20 Plaintiff had moderate impairments in social functioning, daily

21 activities of living, and the ability to respond appropriately to

22 others in the work place.  (AR 151.)  Dr. Kikani also opined that

23 Plaintiff had mild to moderate impairment in concentration,

24 persistence, and pace, and that Plaintiff could be expected to have

25 moderate episodes of emotional deterioration under customary work

26 pressure.  (AR 151.)

27      The ALJ found that Plaintiff suffered from depression.  (AR 13.)

28 He also described Dr. Kikani's findings, and summarized Dr. Kikani's

1  opinion as that Plaintiff was "moderately psychiatrically impaired."

2  (AR 14-15.)  When evaluating Plaintiff's residual functional capacity,

3  however, the ALJ did not identify any functional limitations related

4  to her psychiatric impairment, and merely concluded that Plaintiff

5  retained the capacity for "simple, repetitive tasks."  (AR 16.)  The

6  Court finds that this assessment failed to take into account all of

7  Plaintiff's mental impairments as established by the evidence, and

8  that, in making this assessment, the ALJ improperly rejected the

9  opinion of Dr. Kikani.

10      The ALJ summarized Dr. Kikani's opinion, but implicitly rejected

11  it, finding only that Plaintiff retained the capacity to perform

12  "simple, repetitive tasks."[2]  This finding implicitly rejected Dr.

13  Kikani's opinion inasmuch as it failed to incorporate Plaintiff's

14  mental impairments as noted by Dr. Kikani.  While a limitation to

15  "simple, repetitive tasks" may incorporate limitations on

16  concentration, persistence, and pace, it plainly does not incorporate

17  moderate impairment in dealing with co-workers, supervisors, and the

18  public, nor does it incorporate impairments related to the inability

19  to work under customary pressures.  The ALJ did not provide any

20  explanation for his decision not to incorporate Dr. Kikani's opinion

21  and these limitations in his findings.

22      The Agency argues that there was no error because "Dr. Kikani

23  never expressed an opinion of Plaintiff's residual functional

24  capacity."  (JS at 6-7.)  The Court is not persuaded by this argument.

25

26      [2]  The ALJ also noted that the State Agency doctors opined that

27  Plaintiff should be further limited to working in a non-public
   setting.  (AR 16.)  The ALJ omitted the "non-public" restriction from

28  his findings without explanation.  (AR 18.)

1   As the Agency well knows, the determination of residual functional

2   capacity is reserved for the Agency, which looks to medical sources to

3   provide opinions on the nature and severity of a claimant's

4   impairments.  20 C.F.R. § 416.927(e)(2).  Moreover, while Dr. Kikani

5   did not complete a psychiatric review technique form, his evaluation

6   set forth opinions regarding Plaintiff's mental limitations in terms

7   similar to those in the form, specifically that Plaintiff showed:

8   moderate impairment in social functioning and daily activities; mild

9   to moderate impairment of concentration, persistence, and pace;

10  moderate impairment in the ability to respond appropriately to co-

11  workers, supervisors, and the public; moderate impairment in the

12  ability to persist in a work situation under customary pressure; and a

13  likelihood to have moderate episodes of emotional deterioration in a

14  work situation under customary pressure.  (AR 151.)

15       While the Court is mindful of the fact that determination of

16  residual functional capacity at step four of the sequential evaluation

17  process is the province of the ALJ, the ALJ's assessment must take

18  into account all of Plaintiff's impairments.  20 C.F.R.

19  §§ 416.920a(c), 416.927(e)(2), 416.945, 416.946(b).  Moreover, an ALJ

20  may not reject the opinion of an examining doctor in favor of the

21  opinion of a non-examining doctor without setting forth specific,

22  legitimate reasons for doing so, which are supported by substantial

23  evidence in the record.  *See Nguyen v. Chater*, 100 F.3d 1462, 1466

24  (remanding ALJ's decision implicitly rejecting opinion of examining

25  psychiatrist); and *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d

26  920, 924 (9th Cir. 2002).  The ALJ failed to give any reasons, much

27  less specific reasons supported by substantial evidence, for rejecting

28  Dr. Kikani's opinion, and, therefore, erred.  This error requires

1  remand for further consideration of Plaintiff's mental impairments and

2  residual functional capacity.

3          2.    Assessment of Past Relevant Work

4          Plaintiff argues that the ALJ erred in finding that Plaintiff

5  could perform her past relevant work because that work encompasses

6  more than "simple, repetitive tasks." (JS at 3-4). Plaintiff further

7  complains that the ALJ failed to comply with the requirement of SSR

8  82-62, which mandate specific factual findings regarding a claimant's

9  prior work. (JS at 4-6.) Because the Court has found that the ALJ's

10  assessment of Plaintiff's mental residual functional capacity failed

11  to incorporate all of Plaintiff's mental impairments, and that the ALJ

12  improperly disregarded Dr. Kikani's opinion regarding those

13  impairments, the Court need not resolve these issues. On remand, the

14  ALJ should perform the step-four analysis and decide whether Plaintiff

15  can perform her past work as a housekeeper based upon his conclusion

16  on remand as to Plaintiff's residual functional capacity, and in

17  accordance with applicable regulations and rulings.

18          3.    Vocational Expert Testimony

19          Plaintiff contends that the ALJ presented an incomplete

20  hypothetical to the vocational expert by failing to include

21  Plaintiff's specific limitations. Plaintiff's argument is confusing,

22  inasmuch as the ALJ did not rely on his very restrictive hypothetical,

23  in response to which the vocational expert testified that Plaintiff

24  could not perform any work. (AR 284.) Rather, the ALJ found that

25  Plaintiff could perform light work, and used the vocational expert's

26

27

28

1   testimony that Plaintiff's past work as a housekeeper was light work

2   to support his step-four conclusion that Plaintiff could perform her

3   past work.[3]  (AR 17-18, 284.)

4        An ALJ is not required to obtain vocational expert testimony to

5   support his finding that a claimant can perform past work.  *Crane v.*

6   *Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  In this case, however, the

7   ALJ elected to rely upon expert testimony, implying that he believed

8   that the testimony was necessary in Plaintiff's case.  The Court is

9   troubled by the fact that the ALJ relied on this testimony despite the

10  fact that his assessment of Plaintiff's capacity was more limited than

11  simply "light work," adding postural, climbing, and mental

12  restrictions not presented to the vocational expert.  Nevertheless, as

13

14

15

_____

16       [3]  The ALJ relied upon his characterization of the vocational

17  expert's testimony regarding Plaintiff's past work, stating that the
    vocation expert testified that Plaintiff's past work was "light level,

18  unskilled work."  (AR 17.)  The actual testimony was that:

19       There was work in housekeeping in a convalescent facility,
         that is light, unskilled, SVP 2.  The housekeeping that she

20       mentioned I believe would fall under a category of medium
         work and unskilled, SVP 2.

21

22  (AR 284.)

23       Plaintiff testified only about one prior job--as a housekeeper
    for eight months.  (AR 257.)  The Court finds this testimony

24  ambiguous, and, therefore, finds it difficult to assess the ALJ's
    reliance on it.  While the Ninth Circuit has not required an ALJ to

25  make explicit findings at step four regarding past work both as
    generally performed in the economy and as actually performed by

26  Plaintiff (*See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001),

27  on remand, the ALJ should clarify the record and make specific
    findings of fact with respect to Plaintiff's past work in compliance

28  with SSR 82-62.

1  discussed above, the Court need not decide this issue, as a new step-

2  four analysis must be performed based upon the determination of

3  Plaintiff's residual functional capacity on remand.

4  D.    The ALJ Improperly Discredited Lay Witness Evidence

5      The ALJ rejected the statements of Plaintiff's sister-in-law in a

6  third-party activities questionnaire on the grounds that she was

7  "colored by affection for the claimant," and, therefore, not

8  impartial, and that her statements were inconsistent with the medical

9  evidence.  (AR 17.)  Neither ground is a proper basis for rejecting

10 lay testimony.  "The fact that a lay witness is a family member cannot

11 be ground for rejecting his or her testimony." *Smolen v. Chater*, 80

12 F.3d 1273, 1289 (9th Cir. 1996).  In fact, because the sister-in-law

13 was a family member and saw Plaintiff frequently over an extended

14 period of time, she had particular insight into Plaintiff's

15 impairments.  *See id.* (noting that testimony from lay witnesses who

16 see the claimant daily, such as family members, are of particular

17 value).

18     The ALJ also found that the sister-in-law's testimony was not

19 credible because it was inconsistent with the preponderance of medical

20 evidence.  This is likewise an improper basis to reject lay witness

21 evidence.  It is precisely this situation--when pain is a significant

22 factor of the claimed disability, and such pain is not supported by

23 objective medical evidence--where the Agency is directed to seek

24 information from knowledgeable third parties regarding daily

25 activities, the claimant's pain, and its effects on the claimant.  SSR

26 88-13; *see also Smolen*, 80 F.3d at 1289.  Accordingly, the ALJ's

27 rejection of the sister-in-law's statements regarding Plaintiff's

28 daily activities was in error and should be reconsidered on remand.

IV.

CONCLUSION

For all the foregoing reasons, the Court hereby REVERSES and REMANDS this case to the Agency for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED:     June  7  , 2007.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\MORA, J\Memo Opinion _Order.wpd